UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

VALDEN DEVONE WHITE,

                        Petitioner,           Case No. 1:20-cv-717

v.                                    Honorable Phillip J. Green

RANDEE REWERTS,

                        Respondent.

_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  The parties have consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge.  (ECF Nos. 13, 14.)  Petitioner Valden Devone White is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.

On or before July 31, 2020, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

I.      The Petitioner received ineffective assistance of counsel at the plea- bargaining stage in violation of his constitutional rights.

II.    The Petitioner's confession should have been suppressed because it was involuntary in violation of *Miranda*.

(Pet., ECF No. 1, PageID.2.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the Court should deny relief with regard to ground I because it

lacks merit and with regard to ground II because it is unexhausted and it lacks merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), the Court finds that the grounds lack merit.  Accordingly, the Court will deny the petition.

**Discussion**

## I.    **Factual allegations**

Following a three-day jury trial in the Kent County Circuit Court, Petitioner was convicted of felon in possession of a firearm and felon in possession of ammunition, in violation of Mich. Comp. Laws § 750.224f, possession of body armor by a violent felon, in violation of Mich. Comp. Laws § 750.227g, receiving and concealing stolen firearms, in violation of Mich. Comp. Laws § 750.535b, maintaining a drug house, in violation of Mich. Comp. Laws § 333.7405, possession of marijuana, in violation of Mich. Comp. Laws § 333.7403, and felony-firearm, in violation of 750.227b.  On February 15, 2018, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to prison terms of one to two years for possession of marijuana, two to three years for maintaining a drug house, two years, four months to six years for possession of body armor, two years, four months to seven years, six months for felon in possession of ammunition and firearms, and two years, four months to fifteen years for receiving and concealing stolen firearms.  Those sentences were to be served consecutively to a two-year sentence for felony firearm.

Petitioner's challenges to his convictions arose before the trial.  He contends that counsel advised him poorly with regard to a plea offer and that counsel was ineffective for failing to challenge, by moving for a *Walker* hearing, the voluntariness of Petitioner's confession.  Thus, a detailed recitation of the evidence presented at trial is not necessary to resolve Petitioner's habeas challenges.  Nonetheless, for purposes of background, the Michigan Court of Appeals described the underlying facts as follows:

> On the basis of information obtained from a confidential informant, Detective Lindsey Jo Moorehead obtained a search warrant to install a GPS tracker on defendant's vehicle.  After following defendant for six days, the police obtained a warrant to search defendant's home.  The police arrested defendant while defendant was driving, and they found several hundred dollars and marijuana on his person.  The police then searched defendant's home.  During the search, the police found a bottle of codeine; two handguns; marijuana; a bulletproof vest; drug paraphernalia; and a safe that contained ammunition, about $13,000, and traces of cocaine.

> Moorehead interviewed defendant while the other officers conducted the search of his home.  According to Moorehead, defendant told her that the guns, the money, and the bulletproof vest belonged to him.  He also stated that he used cocaine and crack cocaine and that he sold drugs to his friends.  As will be discussed more fully, defendant maintains that he was not given his *Miranda* rights, did not commit any of the charged offenses other than possession of marijuana, and did not confess to Moorehead.  Defendant rejected a plea offer under which certain charges would not be brought if defendant waived the preliminary examination.  Defendant proceeded with the preliminary examination.  Defendant was convicted and sentenced as stated earlier.  Defendant obtained a *Ginther* hearing,[1] following which the trial court determined that trial counsel had not been ineffective.

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

3

(Mich. Ct. App. Op., ECF No. 9-11, PageID.568–569) (footnotes omitted).

The prosecutor presented the testimony of ten witnesses, nine were officers who participated in Petitioner's arrest, the search of the home, or testing of the fruits of the search; and one who was the registered owner of a stolen gun found in the home.  Petitioner presented the testimony of two witnesses:  a family friend, who testified that Petitioner earned his money as a DJ or playing and recording music and that Petitioner did not reside in the apartment that was searched but used it as his studio; and Petitioner's girlfriend, who testified that she resided in the searched apartment, Petitioner did not, the guns and body armor found at the home were hers, the safe and money inside were hers, she knew the combination to the safe, Petitioner did not, and the illicit substances at the home belonged to others who left them there.  Petitioner did not testify.

There was at least one fundamental inconsistency between the story offered by the prosecutor's witnesses and Petitioner's witnesses.  It appears to be beyond dispute that the officer opened the safe located at the home with the combination. The officers testified that the safe was opened with the combination obtained from Petitioner.  Yet Petitioner's girlfriend testified that he did not know the combination and she did not provide it to the officers.   If Petitioner did not know the combination, how did the officers open the safe?  And if Petitioner told them the combination, his implicit claim[2] that he did not tell the officers anything is called

---

[2] The claim was implicit because Petitioner did not testify, but counsel's questions of the officer who secured the confession and his closing argument posited that the confession was a convenient way for the officers to cover up the fact that they never

into question.  The crux of the defense was that Petitioner's girlfriend's testimony was true and the interviewing detective's testimony was not.

The jury was not convinced by Petitioner's defense.  The jurors deliberated for about an hour, certainly not much longer than it would have taken to pick a foreman and determine how the jurors stood on the several counts charged.

Petitioner moved for a new trial, claiming that his counsel rendered ineffective assistance.  The court conducted an evidentiary hearing to permit Petitioner to develop his claim—the same claim he raises in this Court as habeas ground I.  Essentially, Petitioner claimed that counsel failed to properly advise Petitioner regarding an early plea offer from the prosecutor.  Defense counsel and Petitioner testified at the evidentiary hearing.[3]  Defense counsel testified that Petitioner was not interested in a plea, so counsel tried to identify ways to attack the prosecutor's evidence.  Petitioner testified that defense counsel talked Petitioner into rejecting the plea by failing to properly advise Petitioner regarding his limited chances for success at trial.  The trial court found defense counsel's testimony credible and, where Petitioner's testimony was inconsistent with counsel's testimony, the court found Petitioner's testimony to be incredible.  The trial court denied relief.

---

conducted any investigation—never obtained fingerprints and never questioned others about whose residence they were searching.

[3] The first day of *Ginther* hearing testimony appears in the record as part of the appellate materials.  (*Ginther* Hr'g Tr. I, ECF No. 9-11, PageID.764–841.)  The second day of the *Ginther* hearing testimony appears in the record twice: as part of the appellate records and as a separate transcript (*Ginther* Hr'g Tr. II, ECF No. 9-10).

Petitioner appealed his convictions to the Michigan Court of Appeals.  In the brief Petitioner filed with the assistance of counsel, he raised the issues he presents here as habeas ground I.  In a *pro per* supplemental brief, Petitioner raised issues regarding the admissibility of his confession similar to the issue he has presented in habeas ground II.[4]  But he filed that brief late, and it was rejected by the court of appeals.  (Mich. Ct. App. Order, ECF No. 9-11, PageID.578.)

By published opinion issued January 23, 2020, the Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim relating to the plea negotiations, affirming Petitioner's convictions and sentences.  Although the court of appeals did not accept Petitioner's *pro per* brief, it addressed the claim raised therein—perhaps because of the impact of the claim on appellate counsel's principal argument, *see* note 4, *infra*.  With regard to trial counsel's failure to challenge the admissibility of the confession by way of a *Walker* hearing,[5] the court of appeals stated:

---

[4] Review of appellate counsel's brief and the oral argument, available at https://www.courts.michigan.gov/c/courts/coa/case/346901/ (docket #30, visited Oct. 20, 2021), reveals why counsel was unwilling to present the arguments challenging the confession.  Appellate counsel argued that trial counsel's failure to recognize the inevitability and extent of the damage wrought by Petitioner's confession was particularly indicative of trial counsel's ineffective assistance.   Appellate counsel specifically represented that "Appellant did confess.  Regardless of what he said at the *Ginther* hearing, the Appellant gave a full confession when he was questioned by the detective."  (Pet'r's Appeal Br., ECF No. 9-11, PageID.687.)  To present that argument—that Petitioner confessed even though he says he did not—alongside a challenge to the validity of the confession because Petitioner likewise said he did not receive *Miranda* warnings would eviscerate appellate counsel's point.

[5] A *Walker* hearing is conducted in accordance with *People v. Walker*, 132 N.W.2d 87 (1965), which requires trial courts, not juries, to determine the voluntariness of confessions.  At such a hearing,

> [B]ecause defendant denied making a confession at all, rather than
> claiming that his confession occurred but was involuntary, his
> confession was properly a question of fact for the jury rather than a
> proper subject for a *Walker* hearing.  See *People v Neal*, 182 Mich App
> 368, 371–372; 451 NW2d 639 (1990).

(Mich. Ct. App. Op., ECF No. 9-11, PageID.571, n.6.)[6]

Petitioner then filed a *pro per* application for leave to appeal to the Michigan
Supreme Court.  Although Petitioner listed both of his habeas grounds as issues in
the application, he really only argued habeas ground I.  He mentioned the
confession issue, but not as a claim that the trial court should have excluded the
confession.  Instead he argued that trial counsel's failure to challenge the confession

---

> the defendant may take the stand and testify for the limited purpose of
> making of record his version of the facts and circumstances under
> which the confession was obtained.  We hold further that by so doing
> defendant does not waive his right to decline to take the stand on trial
> in chief, if retrial is ordered.  Neither does he waive any of the other
> rights stemming from his choice not to testify.

*Id*. at 91.

[6] The Court must accept the Michigan appellate court's statement of state law.
*Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit has recognized
"'that a state court's interpretation of state law, including one announced on direct
appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"
*Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v.
Richey*, 546 U.S. 74, 76 (2005)).  But the appellate court's reference to *People v.
Neal*, 451 N.W.2d 639 (Mich. Ct. App. 1990), as suggesting that a *Walker* hearing is
foreclosed when the "confessor" denies confessing at all is curious.  *Neal* actually
holds the opposite.  *Neal*, 451 N.W.2d at 640 ("[W]here . . . a defendant claims that
he involuntarily signed a statement and that the statement was fabricated by
police, the trial court must hold a *Walker* hearing prior to introduction of the
statement at trial.  At the hearing the trial court must determine, assuming the
defendant made the statement, whether he did so voluntarily.  If it is found that the
defendant voluntarily made the statement, the defendant is free to argue to the jury
that the police fabricated it.  However, if the trial court at the hearing finds the
statement was involuntarily made, the statement is inadmissible, regardless of the
defendant's claim that he never actually made it.").

is subsequent evidence of counsel's ineffectiveness that calls into question counsel's effectiveness in connection with the plea offer.  By order entered June 26, 2020, the Michigan Supreme Court denied leave to appeal.  This petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).   "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Ineffective assistance of counsel during plea negotiations

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate a claim of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id*. at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id*. (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test also applies to a challenge to a guilty plea based on ineffective assistance of trial counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.* at 58–59.  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  *Id.* at 59.

In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that the *Strickland* standard applies not only where counsel's professionally unreasonable conduct results in acceptance of a plea offer, but also where counsel improperly advises his client and the plea offer is rejected.  As in *Hill*, 474 U.S. at 58, the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See Lafler*, 566 U.S. at 162–68.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).  But that is just part of what the defendant must show:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164.

Petitioner raises a claim under *Lafler*.  In hindsight, that is not a difficult claim to understand.  If Petitioner had accepted the initial plea offer,[7] he would have ended up with a more favorable sentence than the one that followed his jury

---

[7] Petitioner was adamant on appeal that the plea offer at issue in his arguments was "the on-the-record-offer made before the preliminary examination was run." (Pet'r's Appeal Br., ECF No. 9-11, PageID.691.)  There is a logic to selecting that offer as the one that Petitioner would have accepted if he had only enjoyed the benefit of effective assistance because only that offer—and its tenuous tie to the addition of the felony-firearm count—could avoid the 2-year felony firearm sentence.

trial and conviction. But it is only in hindsight, by telescoping everything that happened between that initial offer and the judgment, that Petitioner's claim makes any sense at all.[8] Reviewing the events as they occurred, Petitioner's claim has no merit.

The prosecutor made the plea offer at the very inception of the criminal prosecution:

> Defendant was initially charged with receiving and concealing a stolen firearm, possession of a firearm by a felon, possession of body armor by a violent felon, possession of codeine, maintaining a drug house, and possession of marijuana. Defendant retained attorney Jared Shouey to represent him in the criminal proceedings. A preliminary examination was scheduled and there was an initial plea offer that defendant could plead guilty to the first three charges listed above and the remainder would be dismissed. That offer was not accepted because defendant maintained his innocence and told Mr. Shouey that police were lying. Mr. Shouey also still had not received basic reports and documents regarding the charges, so the preliminary examination was adjourned by agreement to allow some further production before running the examination.

(Kent Cnty. Cir. Ct. Op. & Order, ECF No. 9-11, PageID.614.) Petitioner was arrested on March 27, 2017. (Kent Cnty. Cir. Ct. Docket Sheet, ECF No. 9-1, PageID.119.) Attorney Shouey was substituted in as defense counsel on April 5, 2017. (*Id.*, PageID.121.) Thus, the date initially scheduled for the preliminary examination must have been after April 5, but before April 27, when the preliminary examination was ultimately held.

---

[8] The trial judge reached the same conclusion: "[D]efendant does not even seem to know what he wants other than to say with the benefit of hindsight that he did not like the result of trial and now wants a result more favorable to him." (Kent Cnty. Cir. Ct. Op. & Order, ECF No. 9-11, PageID.618.)

Defense counsel confirmed that sequence of events at the *Ginther* hearing. (*Ginther* Hr'g Tr. I, ECF No. 9-11, PageID.782–783.)  He substituted in and made discovery requests.  At the date initially scheduled for the preliminary examination, the prosecutor provided the police report that disclosed, among other things, Petitioner's confession.  To permit counsel an opportunity to prepare in light of the new information, the preliminary examination was adjourned for "a week or two." (*Id.*, PageID.783.)

Between those scheduled examinations, Petitioner met with his counsel to discuss the content of the police report, particularly the confession.  Petitioner told his counsel that he never made the admissions as reported by the officer.  He also at least suggested that he did not waive his *Miranda* rights.[9]  He also told counsel that the officer told him that he should admit the criminal conduct because she would simply lie and say he had admitted it anyway.  Petitioner also indicated to counsel that he was innocent of the charged crimes and that he did not believe he should be sentenced to time in prison.

Petitioner rejected the initial offer.  But he rejected the plea offer at some time before the parties showed up for the preliminary examination.  Because Petitioner had rejected that initial offer, at the preliminary examination, the prosecutor informed the court that there was no plea offer on the table.  (Prelim. Exam Tr., ECF No. 9-2, PageID.135.)  The prosecutor also informed the court that

---

[9] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478–79.

he had advised Petitioner and his counsel that if they went forward with the preliminary examination that day, the prosecutor would be adding new charges for possession of ammunition by a felon and possession of a firearm during the commission of a felony.   (*Id*.)   That consequence, however, was not tied to Petitioner's rejection of the plea offer, it followed only from the decision to ***not*** waive the preliminary examination.   The prosecutor made clear that Petitioner could choose to waive the preliminary examination with or without a plea offer and he would then enjoy the benefit of avoiding the additional charges.   The trial court inquired of defense counsel whether Petitioner wanted to proceed with the preliminary examination.   Counsel informed the court that Petitioner elected to move forward with the preliminary examination and the court confirmed that was Petitioner's desire by directly inquiring of Petitioner.

Petitioner accuses his counsel of ineffective assistance in many respects, he claims counsel should not have advised Petitioner to go forward with the preliminary examination, counsel should not have challenged the arrest warrant by motion, counsel should have advised Petitioner that he had no chance of success in light of his confession, counsel should have filed his pretrial motion within the deadlines set by the court, and counsel should have challenged the voluntariness of Petitioner's "confession" by moving for a *Walker* hearing.   But there is no real connection between any of those instances of ineffective assistance and Petitioner's initial decision to reject the plea.

16

As soon as defense counsel had the police report in hand, he informed Petitioner that it would be very difficult to prevail at trial because of the officer's claims regarding Petitioner's confession.  In light of Petitioner's insistence that he was innocent and his claim that the confession report was manufactured, counsel proceeded with the preliminary examination for the purpose of exploring with the investigating officers their testimony regarding the search warrant and the confession, in the hope of finding a basis to suppress the evidence and the confession.  That effort did not succeed, and it carried a real cost: the prosecutor added the felony-firearm count.[10]

The prosecutor made another plea offer before trial.  (Trial Tr. I, ECF No. 9-6, PageID.212–218.)  That final offer required Petitioner to plead guilty to receiving and concealing a stolen firearm, felon in possession of a firearm, and felony-firearm. In exchange, the prosecutor would dismiss the other counts and the habitual offender enhancement.  The difference between this final offer and the initial offer was the addition of the two-year felony-firearm sentence.  As the court explained to Petitioner, the risk Petitioner could avoid by accepting the offer was the potential of increasing his minimum sentence by 33 months and the certainty of increasing his maximum sentence by five years.

---

[10] The prosecutor also added the felon in possession of ammunition count; however, that did not impose any greater burden on Petitioner with regard to his sentence either as part of plea negotiations or following his convictions.

Even though Petitioner rejected the offer, he did not suffer the worst possible outcome.  His highest minimum sentence to be served consecutively to the felony-firearm two-year sentence was 28 months.  The court did not impose the highest estimated potential minimum sentence of 56 months.  That maximum minimum sentence followed from the marijuana conviction which, because it was a second drug offense, doubled the potential minimum penalty from five to 28 months to ten to 56 months.  The court did not impose anywhere near the maximum sentence for that offense.

The highest minimum sentence the trial court imposed was for the most serious offense, at least the most serious offense as measured by the maximum sentence.  Receiving and concealing stolen firearms carried a ten-year maximum, increased to fifteen years by Petitioner's second habitual offender enhancement.  The actual minimum sentence range for that most serious offense was seven to 28 months.  Thus, by declining the final plea offer Petitioner paid the penalty of an additional five months on that minimum sentence—he would be eligible for release about now, instead of in April 2022—and five years on his maximum sentence.

Petitioner decided to go forward with trial.  His counsel reports that Petitioner thought it was worthwhile to put the testimony of his girlfriend in front of the jury.  If the girlfriend's testimony were deemed credible, or at least more credible than the officer's account of Petitioner's confession, Petitioner might still prevail.

It is noteworthy, however, that the risks and rewards of the plea offer immediately before trial were, in almost all respects, the same as the risks and rewards of the plea offer that preceded the preliminary examination.  The nominal total potential minimums and maximums had changed—the felony-firearm count meant that the resulting actual minimum and maximum times served would be increased by two years.  That difference could certainly impact the desirability of proceeding to trial with the hope of complete acquittal, i.e., Petitioner might be willing to accept the risk of trial for the chance of acquittal, no matter how small that chance might be, if losing meant spending approximately four years in prison, and the best he could hope to accomplish with a plea would be getting out five months earlier; but he might be unwilling to accept that risk if the penalty at issue were only a couple of years.  That reasoning is not unlike the reasoning employed by persons who buy lottery tickets only as the jackpots climb higher and higher.  Nonetheless, comparing the sentences Petitioner would serve if he took any particular plea offer to the sentences Petitioner would serve if he were convicted of the charges at trial, the difference between the two circumstances is the product of the habitual offender enhancement which would be exactly the same under both plea offers:  the possibility of five months on the minimum and the certainty of five years on the maximum for the most serious offense.

In rejecting Petitioner's claim, the Michigan Court of Appeals applied the *Lafler* standard—or, more accurately, the *Strickland* standard as applied to plea negotiations as directed in *Lafler*. (Mich. Ct. App. Op., ECF No. 9-11, PageID.569–570). Thus, it cannot be claimed that the state court applied the wrong standard. To prevail, Petitioner must show that the state court applied the standard unreasonably.

The court of appeals rejected Petitioner's claims because the alleged professionally unreasonable conduct that purportedly resulted in rejection of the favorable plea offer occurred "*after* the plea was rejected" and "[w]hat happened after the plea was rejected is irrelevant . . . ." (*Id.*, PageID.571.) The professionally unreasonable conduct occurred when Petitioner's attorney counseled Petitioner to go forward with the preliminary examination—an event which followed and was entirely independent of the plea offer and its prior rejection. The professionally unreasonable conduct occurred when Petitioner's attorney filed an allegedly groundless motion to suppress and an allegedly groundless motion to discover the identity of the confidential informant, events which followed long after Petitioner rejected the plea. The professionally unreasonable conduct occurred when counsel failed to file a motion for a *Walker* hearing to challenge the voluntary character of the confession. That failure also occurred long after Petitioner rejected the plea offer.

The court of appeals found—and the record supports—that Petitioner was unwilling to accept that initial plea offer because "he was facing a felony and potential prison time even under the plea offer . . . ." (*Id.*, PageID.572.) Moreover, the court of appeals found that trial counsel warned Petitioner of the risk of proceeding with the preliminary examination and the import of adding felony-firearm to the list of charges. (*Id.*) To the extent there might be any link between the decision to proceed with the preliminary examination and the rejection of the plea offer, counsel informed Petitioner of the risks but Petitioner, claiming he was innocent and the police were liars, made the decision to go forward. Thus, the appellate court's determination that Petitioner failed to demonstrate that he would have accepted the plea offer if properly advised—because he was properly advised and declined the offer anyway—is amply supported by the record. Moreover, the appellate court's determination that Petitioner failed to demonstrate that the plea offer would have been accepted by the court where the trial court made clear that it would not have accepted any plea from Petitioner where Petitioner maintained his innocence of the charges,[11] is well-supported by the record as well.

Put simply, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland* and *Lafler*. Accordingly, Petitioner is not entitled to habeas relief on that claim.

---

[11] And Petitioner maintained his innocence even through the *Ginther* hearing. (*Ginther* Hr'g Tr. II, ECF No. 9-10, PageID.554–555.)

## IV. Suppression of the confession

Petitioner's second habeas issue challenges the admission of his confession. Respondent notes that Petitioner never properly exhausted his state court remedies with respect to this claim.

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993); *see also Picard*, 404 U.S. at 277–78. With regard to procedure, the fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its

merits unlikely. *Olson v. Little*, 604 F. App'x 387, 402 (6th Cir. 2015) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("[W]here the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor,' . . . does not, for the relevant purpose, constitute 'fair presentation.'")); *see also Ogle v. Ohio Dep't of Rehab. & Corr.*, No. 17-3701, 2018 WL 3244017, at *2 (6th Cir. Feb. 27, 2018); *Stokes v. Scutt*, 527 F. App'x 358, 363–64 (6th Cir. 2013)

Petitioner has not fairly presented this claim to the Michigan appellate courts. Petitioner sought leave to raise it in the Michigan Court of Appeals by a motion for leave to file a late *pro per* supplemental brief. That motion was denied. Moreover, in the Supreme Court, Petitioner listed the issue, but he never presented argument on the issue as listed. The Court agrees with Respondent that Petitioner has failed to exhaust his state court remedies with respect to this claim.

Nonetheless, although relief cannot be granted absent exhaustion, 28 U.S.C. § 2254(b)(1), it can be denied, 28 U.S.C. § 2254(b)(3). For the reasons set forth below, the petition is properly denied on the merits; therefore, the Court will look beyond Petitioner's failure to exhaust his state court remedies.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before

his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478–79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).  Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 532 U.S. 162, 172 (2001) (quotation and citation omitted). The cases in which a defendant can make a colorable argument that a confession was compelled despite the fact that law enforcement authorities adhered to *Miranda* are rare.  *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (citation omitted).

It is difficult to pin down the precise nature of Petitioner's claim that his "confession" was not voluntary.  Setting aside Petitioner's claim that he did not actually confess anything to the officer, he also suggests that he did not receive the *Miranda* warnings.  But he never actually says that.  In his *pro per* motion to file a supplemental brief, (Pet'r's Mot., ECF No. 9-11, PageID.592–602), Petitioner recounts the officer's testimony that she gave him the *Miranda* warnings and that she did not have him sign the *Miranda* warnings card because he was handcuffed. He never claimed that her testimony was untrue; instead he claimed "that there was no proof that the defendant said anything without the Defendant [p]roperly signing a confession and properly waiving his constitutional rights . . . ." (*Id.*,

24

PageID.597.)   He contended that he was not afforded the *Miranda* warnings because: "the interview . . . was not recorded per policy" and Petitioner "did not sign the warning card[.]"   (*Id.*, PageID.599.)   Thus, Petitioner argued, there was "no proof what so ever that Defendant-Appellant waived this right . . . ."   (*Id.*, PageID.599–600.)   The proposed *pro per* supplemental brief cited only the law regarding the voluntariness of confessions.  (Pet'r's Proposed *Pro Per* Suppl. Br., ECF No. 9-11, PageID.581–587.)   There is no discussion of the factual question of whether the *Miranda* warnings were given.

Even when Petitioner testified at the *Ginther* hearing he started to say that he told his counsel that *Miranda* warnings were never given, but then backed off to say that he told counsel he never waived his *Miranda* rights.  (*Ginther* Hr'g Tr. II, ECF No. 9-10, PageID.544) ("And I told him that statement never happened, and that *Miranda* rights was never—well, I never waived my *Miranda* rights, and I also told him that they never read me my *Miranda* rights until right before they took me to the jail.")  Petitioner's appellate counsel managed to get Petitioner to say that he told counsel that the officer did not read Petitioner his *Miranda* rights until after Petitioner made the incriminating statements.  (*Id.*, PageID.545) ("Q:  Okay.  So you told him your rights were read after you made those alleged statements.   A: Correct.").   But sifting through Petitioner's often confoundingly unresponsive answers to his own counsel's questions and the fact that appellate counsel's questions of Petitioner were crafted to ask what Petitioner told his trial counsel rather than asking what actually happened, there is never a point where Petitioner

clearly says that the officer did not read the *Miranda* warnings before Petitioner made the incriminating statements.  One could make that inference, but it is never actually stated.[12]   In Petitioner's application for leave to appeal to the Michigan Supreme Court, he states that after his trial counsel told Petitioner about the confession, He replied to trial counsel "that he had not confessed and the *Miranda* warnings were never read to him before he made the alleged confession."  (Pet'r's Appl. for Leave to Appeal, ECF No. 9-12, PageID.1227.)   In support, he cites the *Ginther* hearing transcript, the same testimony that is described in detail above.

---

[12] That same uncertainty came through in the *Ginther* hearing testimony of trial counsel:

> I'm not sure if he denied that he got the *Miranda* or if he said that he didn't remember getting the *Miranda*, but there was some question whether or not he received the *Miranda* rights.

(*Ginther* Hr'g Tr. I, ECF No. 9-11, PageID.786.)  But counsel did not recall any issue regarding the timing of the *Miranda* warnings, i.e., that Petitioner only received them after the confession.  (*Id.*, PageID.787.)  The most definitive statement counsel could agree to was that defendant "may have told [counsel] 'I never agreed to that, I didn't waive those rights?"  (*Id.*)  That is a far cry from a statement that the rights were never read to Petitioner.   Despite repeated questioning from Petitioner's appellate counsel, trial counsel stood firm: "I can't say for sure if he was disputing whether he got the *Miranda*.  I know for sure he disputed that he ever made those [inculpatory] statements."  (*Id.*, PageID.788.)  For those reasons, trial counsel did not pursue a *Walker* hearing to challenge the voluntariness of the confession.  As trial counsel put it, "there was testimony from the [officer] that . . . she read the constitutional card verbatim, . . . [t]here was no video to contradict otherwise, . . . there w[ere] no . . . corroborating witnesses that could contradict otherwise, and the only thing that [counsel] had at that time was [Petitioner] saying that he didn't make the confession."  (*Id.*, PageID.819.)  Balanced against that were Petitioner's vague statements that were "not clear as to whether he even admitted whether or not he got the *Miranda*."  (*Id.*)  Thus, trial counsel concluded that he could not make a good faith argument in support of a *Walker* hearing and that the issue was not winnable.  (*Id.*, PageID.818–819.)

Because this issue was never fairly presented to the state appellate courts, this Court's review is *de novo*.  Petitioner's argument is focused on the prosecution's failure to prove that the *Miranda* warnings were given; but the proof Petitioner demands is a signed *Miranda* warning card or a recording of the warnings and Petitioner's waiver of his rights.  But there is no federal constitutional requirement that the prosecutor prove by signed card or recording that the warnings were given.  The officer's testimony is adequate.  Thus, Petitioner's claim that the prosecutor failed to prove that the warnings were given is utterly meritless.  Indeed, it is Petitioner who has failed to point to any record testimony that actually supports his claim that the warnings were not given as the officer testified.  At best, there is record support—in the form of Petitioner's own *Ginther* hearing testimony—for the claim that Petitioner ***told*** his trial counsel that the *Miranda* warnings were not timely given.  And the record is not even particularly clear on that point.

On this record, the Court cannot conclude anything other than that the *Miranda* warnings were given to Petitioner before he confessed.  Thus, there is no basis to suppress the confession and its admission did not violate Petitioner's constitutional rights.  Moreover, to the extent Petitioner intends his statement of this issue to include a claim that his counsel rendered ineffective assistance for failing to challenge the voluntariness of the confession by way of a *Walker* hearing, that claim would also be meritless because the underlying claim that the confession was involuntary is groundless.  "Omitting meritless arguments is neither

professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).[13]

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

---

[13] The Michigan Court of Appeals reached the same conclusion—"[c]ounsel is not ineffective for failing to pursue a meritless position"—but for a different reason— "because defendant denied making a confession at all, rather than claiming that his confession occurred, but was involuntary, his confession was properly a question of fact for the jury rather than a proper subject for a *Walker* hearing." (Mich. Ct. App. Op., ECF No. 9-11, PageID.571, n.6.)

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

Moreover, although the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

For the foregoing reasons, the Court denies the habeas petition and a certificate of appealability. Finally, the Court declines to certify that an appeal would not be taken in good faith.

Dated: November 5, 2021                    /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge